Natasha **BOLDTHEN,** Plaintiff,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 2397, a municipality; Independent School District No. 393, a municipality Le Sueur Public Schools Board of Education; Edward Blumhoefer, individually and in his official capacity; J. Gary Hayden, individually and in his official capacity; John Does, individually and in their official capacities; and Jane Does, individually and in their official capacities, Defendants.**

Civ. No. 3–94–375.

United States District Court,
D. Minnesota,
Third Division.

Oct. 25, 1994.

Stephen Fiebiger, Stephen C. Fiebiger & Associates, Chtd., Minneapolis, MN, for plaintiff.

John Sheran, Leonard, Street and Deinard, Minneapolis, MN, for defendants.

## MEMORANDUM OPINION
## AND ORDER

DAVIS, District Judge.

### INTRODUCTION

Plaintiff Natasha Boldthen commenced this action against the above school district, school board and individual school officials, alleging a pattern of harassing, intimidating and stigmatizing conduct by school officials and condoned by the school district, which violated her federal civil rights and her rights protected under state tort law. Plaintiff claims such conduct began on September 12, 1986 and continued throughout Plaintiff's enrollment in the school district.

Presently before the Court is Defendants' motion for summary judgment. Defendants request that the Court dismiss the federal claims, Counts I, II and III, with prejudice and the supplemental state claims, Counts IV–IX, without prejudice. Based upon the files, records and proceedings herein and for the reasons set forth below, the Court will grant Defendants' motion for summary judgment.

### BACKGROUND

On September 12, 1986, the plaintiff, Natasha Boldthen, then age twelve and in the seventh grade at Le Sueur District Secondary School, was called out of class and instructed to go to Activity Director Edward Blumhoefer's office. Blumhoefer held this meeting in response to a call from a parent to the principal of the Le Sueur Elementary School, Dennis Kellogg, concerning an event on the school bus the previous day. According to the parent, her children had observed a child named "Natasha" exit the school bus at a location other than her home and had also seen cigarette papers in "Natasha's" flute case. The parent expressed her concern about possible drug use in the school. Kellogg determined that the referenced individual attended the secondary school; he then reported the call to Secondary Principal, Judy Maethner.

The act of leaving the school bus at a location other than the child's home destination without authorization violates the school's transportation policy. Plaintiff concedes that she knew of the policy but that she had never witnessed its enforcement.

Principal Maethner instructed Blumhoefer to speak to Plaintiff regarding the bus incident but not to inquire about the cigarette papers. Plaintiff claims that she became concerned upon arriving at the office when she learned that she was to see Blumhoefer, the "school disciplinarian." Plaintiff claims that when she entered his office, Blumhoefer rose and shut the door, a practice he had not followed with any of the other students entering his office before Plaintiff.

Blumhoefer's office was approximately ten square feet. As he spoke to Plaintiff, Blumhoefer sat behind his desk, leaned across the desk and looked at Plaintiff over his eyeglasses. Blumhoefer asked Plaintiff whether she had gotten off of a school bus without a note. Plaintiff, recalling another occasion when she exited the bus while it was still parked at the school, responded "no." Plaintiff then recalled the previous day when she had departed from the bus at the Park Elementary School without a note and answered "yes." Plaintiff claims that Blumhoefer spoke with a raised voice and repeatedly asked her whether she was telling him the truth. Plaintiff became visibly upset during this interrogation and began to cry. Blumhoefer raised his voice further, leaned over his desk and asked if she was lying to him. When she responded "no," Blumhoefer stated, "If you're not lying, then why are you crying." Blumhoefer repeated this statement several times. Blumhoefer concedes that he knew Plaintiff was upset.

Plaintiff also contends that Blumhoefer repeatedly threatened to telephone her mother; several times he lifted the receiver, dialed and hung up. During this time, Blumhoefer asked Plaintiff if she was sure she was telling the truth. Eventually, Blumhoefer phoned

Plaintiff's mother, Katherine Boldthen, and informed her about the incident on the bus. Plaintiff's mother spoke with Plaintiff and recognized that she was upset.

Later that day, Plaintiff's parents, Katherine and Dion Boldthen, came to the school to bring Plaintiff home. The parents inquired of Blumhoefer why he called Plaintiff into his office. Plaintiff contends that Blumhoefer knocked on the window of her parents' car when she was inside and told Plaintiff to tell her parents that nothing happened in his office and that he did not intimidate her. The Boldthens, unsatisfied with Blumhoefer's explanation of the incident, asked the superintendent, Dr. J. Gary Hayden, what had occurred. Hayden investigated the incident and subsequently informed the Boldthens of the information the principal had received from the parent regarding the cigarette papers. The Boldthens informed Hayden that Plaintiff used the papers to clean her flute. The Boldthens became upset by the implied accusation that Plaintiff was involved in drug use.

Following this incident, the Boldthens instituted a series of complaints against the school district, the school board and school officials and employees. The Boldthens were not satisfied with what they perceived as inaction by the school officials in response to their complaints.

Plaintiff contends that from the date Blumhoefer called her into his office, Blumhoefer, Hayden and Maethner engaged in behavior intended to harass and intimidate the plaintiff. Plaintiff alleges that these defendants followed her in the hallways and the cafeteria, glared at her in the cafeteria, and sat behind her during classes after being instructed to avoid any contact with her. Plaintiff claims that Blumhoefer inexplicably attended Plaintiff's cheerleading practices and stared at her. On one occasion, Blumhoefer substituted in one of Plaintiff's classes and stared at her from behind the desk. Plaintiff also claims that another time, Blumhoefer blocked the exit of her mother's car from a grocery store parking lot when Plaintiff was not in the car. Blumhoefer's daughter joined Plaintiff's 4–H club although the

county had six other clubs, an act which Plaintiff perceived as harassment.

Plaintiff claims that Maethner frequently touched Plaintiff by patting her on the back or on the hand although she knew that Plaintiff feared her and that she should avoid all contact with Plaintiff.

Plaintiff claims that the above conduct by the school officials, beginning with the incident in Blumhoefer's office on September 12, 1986, caused her severe psychiatric problems. Approximately one week after the confrontation between Plaintiff and Blumhoefer, Plaintiff saw the school counselor, Dorothy Clark. Plaintiff had begun experiencing nightmares and hallucinations. According to Plaintiff, Clark was insensitive to Plaintiff's problems, characterizing her fear of Blumhoefer as "stupid."

Plaintiff continued to experience hallucinations and hear voices. For example, Plaintiff would visualize the faces of school officials in the darkness or on the faces of other people. Plaintiff received treatment from various psychologists and psychiatrists; from December, 1987, through January, 1988, Plaintiff was hospitalized for major depression with psychotic features and Post Traumatic Stress Disorder.

Plaintiff claims that following her hospitalization, the school officials continued to harass and intimidate her. The intimidation persisted through Plaintiff's twelfth grade year. Plaintiff asserts that even as recent as December, 1992, when she attended a wrestling match at her former high school, Blumhoefer stared at her in an intimidating fashion throughout the match. Plaintiff contends that despite numerous complaints and requests by her, her parents and her attorney, for the harassing conduct to cease, and despite notice of Plaintiff's psychiatric condition, the school district and the school board persistently disregarded Plaintiff's complaints and took no action to remedy the situation.

Plaintiff claims that as a result of the school officials' behavior throughout her enrollment in the school district and the school district's failure to take sufficient remedial action, she suffered severe psychological and

emotional problems, which still exist today. Plaintiff claims that the defendants' conduct instilled in her a "fear of being close to someone emotionally or physically." She suffers from low self esteem and fears being alone with older men.

On January 27, 1993, Plaintiff commenced an action in state court based upon the same allegations as set forth above. On January 29, 1993, Plaintiff commenced this suit in Federal District Court alleging the following claims: violation of 42 U.S.C. § 1983 (Fourteenth Amendment deprivation of liberty); violation of 42 U.S.C. § 1985(3) (conspiracy); violation of 42 U.S.C. § 1986 (neglect to prevent conspiracy); negligence; negligent infliction of emotional distress; assault; fraud; negligent retention and supervision; and intentional infliction of emotional distress.

## DISCUSSION

### I. Standard for Summary Judgment

■ Under Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of establishing the non-existence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552–53; *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op.,* 838 F.2d 268, 273 (8th Cir.1988). Once it meets that burden, the non-moving party may not then "rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If, based upon the evidence, a reasonable jury could not return a verdict for the non-moving party, summary judgment is appropriate. *Id.* at 248, 106 S.Ct. at 2510.

### II. 42 U.S.C. § 1983

Plaintiff alleges in Count I of her complaint that defendants Blumhoefer, the School District, the School Board and John and Jane Does,

deprived Plaintiff of her right to be free from intimidation, stigmatization and harassment by Defendant Blumhoefer upon public school property controlled and owned by Defendant School District, governed by Defendant School Board of Education, and administered by Defendant Hayden, and, upon information and belief, John Doe and Jane Doe Defendants.

Plaintiff bases this count on 42 U.S.C. § 1983, which provides,

[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ Section 1983 creates no substantive rights, but merely provides a remedy for the deprivation of existing constitutional or statutory rights. *Wilson v. Garcia,* 471 U.S. 261, 278, 105 S.Ct. 1938, 1948, 85 L.Ed.2d 254 (1985). A plaintiff must establish the following elements to state a cause of action under section 1983:

1. the defendants must act under color of state law;
2. the defendants' actions must be intentional; and
3. the defendants' actions must cause the deprivation of the plaintiff's rights.

*Chapman v. Musich,* 726 F.2d 405, 407 (8th Cir.1984), *cert. denied,* 469 U.S. 931, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984). *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691–92, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978).

■ Plaintiff claims a deprivation of her rights under the Due Process Clause of the Fourteenth Amendment,[1] which provides that "no State shall ... deprive any person of life, liberty, or property, without Due Pro-

---

1. Plaintiff alleges no deprivation of a statutory right.

cess of Law." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 194, 109 S.Ct. 998, 1002, 103 L.Ed.2d 249 (1989). To support a claim under the Due Process Clause, a plaintiff must identify a specific affected property or liberty interest. *See Paul v. Davis*, 424 U.S. 693, 700–712, 96 S.Ct. 1155, 1160–66, 47 L.Ed.2d 405 (1976). Plaintiff does not claim a deprivation of a property interest; instead, she claims the defendants deprived her of a liberty interest to be free from intimidation, stigmatization and harassment by school officials.

 Several courts have addressed the liberty interests of children in the context of public schools. In *Ingraham v. Wright*, 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977), the Supreme Court recognized a child's liberty interest to be free from excessive corporal punishment. *Ingraham* involved authorized punishment in a school system consisting of paddling students on the buttocks with a flat, wooden paddle. School officials typically paddled students without first obtaining authority from the principal.[2] *Id.* at 656–57, 97 S.Ct. at 1405. The Court recognized the children's liberty interest, grounded in the historical liberty protected by the Due Process Clause "to be free from . . . unjustified intrusions on personal security." *Id.* at 673, 97 S.Ct. at 1413. As the Court stated,

[t]here is, of course, a *de minimus* level of imposition [of physical punishment] with which the Constitution is not concerned. But at least where school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain, we hold that Fourteenth Amendment liberty interests are implicated.

*Id.* at 674, 97 S.Ct. at 1414.

Several courts have applied the right to bodily integrity articulated in *Ingraham* to cases of sexual abuse and molestation of children by school officials. For example, in *Stoneking v. Bradford Area School District*, 882 F.2d 720 (3rd Cir.1989), *cert. denied*, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990), a case relied upon by Plaintiff, the high school band director employed physical force, threats and coercion to sexually abuse and harass a student during her attendance at the school. *Id.* at 722. The band director ultimately pled guilty to criminal charges; the student then sued the principal, other school officials and the school district for maintaining a policy of reckless indifference to known sexual abuse of students by teachers. *Id.*

 In determining whether the officials were entitled to qualified immunity, the court initially addressed whether the Due Process

---

**2.** The petitioners in *Ingraham* challenged this practice under the Eighth Amendment and under both the procedural and substantive provisions of the Due Process Clause of the Fourteenth Amendment. The Court granted certiorari only on the questions of cruel and unusual punishment and procedural due process, not on the issue of substantive due process.

Under a procedural due process analysis, the court must determine whether a liberty interest is implicated, requiring due process of law before any deprivation of that interest may occur. The focus is primarily upon procedural safeguards. Substantive due process, in contrast, focuses more upon the conduct of state officials and prohibits, regardless of procedural safeguards, conduct which so arbitrarily and unjustifiably intrudes upon one's fundamental rights that it "shocks the conscience." *See Rochin v. California*, 342 U.S. 165, 169–73, 72 S.Ct. 205, 208–10, 96 L.Ed. 183 (1952); *Doe v. Taylor Independent School District*, 15 F.3d 443, 450 (5th Cir.1994).

The Supreme Court in *Ingraham* stated that excessive corporal punishment of a student implicated a liberty interest; the Court, however, addressed the issue of whether the school violated procedural due process because the corporal punishment typically was inflicted without prior notice or hearing. *See Ingraham*, 430 U.S. at 674–77, 97 S.Ct. at 1414–16. *Ingraham* thus left unanswered the question of whether corporal punishment in public school could violate substantive due process regardless of procedural safeguards.

Plaintiff here alludes to both the substantive and procedural components of the Due Process Clause. *See* Plaintiff's Memorandum at 24–25. For the purposes of Defendants' summary judgment motion, however, the Court must determine the threshold question of whether Plaintiff articulates a recognized liberty interest under either theory. Finding no identifiable liberty interest under either the substantive or the procedural component of the Due Process Clause, the Court does not reach the issue of which component applies.

Clause encompassed the right of a student to be free from sexual molestation.[3] *Id.* at 726. The court found that sexual molestation constitutes an intrusion of a child's bodily integrity just as corporal punishment; therefore, the Due Process Clause necessarily encompasses a student's right to be free from sexual assaults by his or her teachers. *Id.* at 727.

Similarly, in *Doe v. Taylor Independent School District*, 15 F.3d 443 (5th Cir.1994), the plaintiff sued the school superintendent and principal for failing to protect her from sexual molestation by a school coach. Addressing whether the plaintiff had articulated a constitutional deprivation, the court found that the liberty interest protected under the Fourteenth Amendment Due Process Clause includes the right to be free from sexual molestation by a state actor.[4] *Id.* at 451. *See also Jane Doe A. v. Special School District of St. Louis County*, 901 F.2d 642 (8th Cir.1990) (sexual assault of handicapped students by school bus driver constituted a deprivation of students' liberty interests in bodily security).

Each of the public school cases Plaintiff relies upon in asserting her liberty interest involves a violation of bodily integrity. Almost every case Plaintiff cites, in fact, involves sexual abuse and molestation of a student by a school official or employee. In contrast to those cases, Plaintiff alleges no physical or sexual contact or threat of physical contact between Blumhoefer and her, either during the initial confrontation in his office or subsequently during her attendance at the school.

The physical touching Plaintiff alleges by Principal Maethner cannot be characterized other than as friendly, consoling touching, even if the psychological effects of the touch-

ing were as Plaintiff describes. She does not allege sexual abuse in any form. Neither does she allege any physical contact with any other school official or employee.

Assuming all facts stated by Plaintiff as true, the conduct of the school officials amounts, at the very most, to the following: stern discipline, accusations of falsehoods, threats to call Plaintiff's mother, intimidating glances and stares, following in the hall, and creating a close proximity with Plaintiff which Plaintiff perceived as intimidating. Plaintiff alleges nothing remotely close to the excessive corporal punishment or the sexual abuse and molestation at issue in the public school cases. Even assuming Plaintiff found this behavior intimidating and harassing, it does not rise to a level of conduct which encroaches upon a recognized liberty interest. As stated by the Supreme Court, "the range of interests protected by procedural due process is not infinite." *Board of Regents v. Roth*, 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

■■■ In the absence of any allegation of physical restraint or intrusion upon bodily integrity, as involved in the above cases, the Supreme Court decision of *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), is instructive. In *Paul*, the police department distributed a flyer to numerous merchants falsely listing the plaintiff as a shoplifter. Paul claimed that the defamatory flyer deprived him of his Fourteenth Amendment liberty interest in his reputation. *Id.* at 697, 96 S.Ct. at 1158–59. The Court held, however, that damage to a person's reputation or the resulting stigma does not offend a liberty interest protected by the Constitution. *Id.* at 712–13, 96 S.Ct. at 1166. Rather, one must suffer a more tangible loss, such

---

3. Under the doctrine of qualified immunity, a defendant must show that his conduct did not violate ' "clearly established statutory or constitutional rights of which a reasonable person would have known." ' *Stoneking*, 882 F.2d at 726 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Thus, the court evaluated whether the plaintiff had a clearly established constitutional right and, if so, whether the defendants' policies and practices regarding that right were unconstitutional under a reasonable official standard.

4. *Doe v. Taylor Ind. School District* expressly held the sexual molestation of a schoolchild to violate the substantive component of due process. The court found that unlike reasonable corporal punishment, which may advance a legitimate punitive or disciplinary objective, the sexual abuse of a child is never justified and always deprives the child of substantive due process. 15 F.3d at 451–52.

as loss of employment, in order to state a constitutional deprivation. Similarly, the stigma and intimidation plaintiff claims to have suffered by the perceived punitive and disciplinary acts of the school officials, without more, does not implicate a constitutional liberty interest.

Under Plaintiff's argument, any student who, justifiably or unjustifiably, felt stigmatized or intimidated by discipline at school, or who believed that a particular teacher "picked on" him or her, could bring a section 1983 civil rights action against the teachers, the school board and the school district. Section 1983 is not the proper remedy for such complaints.

■ Construing all evidence in favor of Plaintiff, the conduct of Blumhoefer and the other individuals does not, as a matter of law, constitute a deprivation of a liberty interest protected under the Due Process Clause. Having found no deprivation of a constitutional right, the Court will address the liability of the supervisory school officials and the school district under section 1983.

### A. Liability of Hayden, School Board and Other Individuals Under Section 1983

■ Individuals and supervisors may be held personally liable for a violation of section 1983 if the plaintiff proves that the supervisors:

1. Received notice of a pattern of unconstitutional acts committed by subordinates;
2. Demonstrated deliberate indifference to or tacit authorization of the offensive acts;
3. Failed to take sufficient remedial action; and
4. That such failure proximately caused injury to the children.

*Jane Doe A. v. Special School Dist. of St. Louis,* 901 F.2d at 645. Supervisor liability under section 1983 is not based upon a theory of *respondeat superior, Monell,* 436 U.S. at 694, 98 S.Ct. at 2037, but upon a supervisor's own conduct demonstrating a "reckless disregard for or deliberate indifference to plaintiff's constitutional rights." *Rubek v.*

*Barnhart,* 814 F.2d 1283, 1284 (8th Cir.1987). Because the Court has found no deprivation of a constitutional right, Plaintiff has failed to establish the first element necessary to impose liability upon supervisory individuals. *See Rubek,* 814 F.2d at 1285 (in the absence of a constitutional violation, the plaintiff cannot support a section 1983 action against supervisors). The section 1983 claim will be dismissed against the individual defendants and the school board as as matter of law.

### B. Section 1983 Liability of the School District

■ A school district may be liable under section 1983 if it had in place an official policy or custom of failing to investigate and respond to complaints of unconstitutional acts by its officials or employees. *Jane Doe A. v. Special School District of St. Louis,* 901 F.2d at 646. To constitute a custom or policy, the school practices must have become " 'so permanent and well settled' as to have the effect and force of law." *Id.* at 646 (citing *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036). To establish a custom or policy of failing to investigate or act on complaints of constitutional violations, a plaintiff must prove the following elements:

1. The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2. Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3. That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Id.*

Again, the lack of a constitutional violation by school officials proves fatal to Plaintiff's claim against the school district. Therefore, the section 1983 action against the school district also will be dismissed as a matter of law.

**III. 42 U.S.C. § 1985(3).**

In Count II of her complaint, Plaintiff alleges that Defendants acted in concert under color of state law to deprive Plaintiff of her Fourteenth Amendment rights in violation of 42 U.S.C. § 1985(3). This section provides:

[i]f two or more persons in any state or territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against one or more of the conspirators.

To establish a violation of section 1985(3), a plaintiff must prove the following elements:

1. A conspiracy;
2. For the purposes of depriving, directly or indirectly any person or class of persons of equal protection of the laws or of equal privileges and immunities under the laws;
3. An overt act in furtherance of the object of the conspiracy; and
4. That the plaintiff:
 a) was injured in his person or property, or
 b) was deprived of having and exercising any right or privilege of a United States citizen.

*City of Omaha Employees Betterment Ass'n v. City of Omaha,* 883 F.2d 650, 652 (8th Cir.1989); *Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir.1986).

To establish the second "purpose" element of a section 1985 conspiracy, the plaintiff must prove a class-based "invidiously discriminatory animus." *City of Omaha,* 883 F.2d at 652 (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102 & n. 10, 91 S.Ct. 1790, 1798 & n. 10, 29 L.Ed.2d 338 (1971)). Plaintiff fails, however, to allege any class-based animosity. She does not allege a deprivation of equal protection of the laws or a denial of equal privileges and immunities under the laws or Constitution of the United States. *See Lewis v. Pearson Found., Inc.,*

908 F.2d 318, 323 (8th Cir.1990) (Section 1985(3) seeks only to protect members of a protected class from deprivation of equal protection of the laws); *Parker v. Chicago Housing Authority,* 730 F.Supp. 115, 121 (N.D.Ill.1989) ("in enacting Section 1985(3), Congress did not seek to prohibit alleged conspiracies to deny due process; rather, Congress sought to prohibit alleged conspiracies to deny equal protection").

Because Plaintiff has not sufficiently stated a deprivation of equal protection of the laws, Count II will be dismissed.

**IV. 42 U.S.C. § 1986**

Plaintiff also claims that the defendants neglected to prevent the conspiracy alleged under section 1985(3), in violation of 42 U.S.C. § 1986. Section 1986 provides in part,

[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured ... for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented.

The viability of a section 1986 claim depends entirely upon the existence of a valid claim under 42 U.S.C. § 1985. *Weseman v. Meeker County,* 659 F.Supp. 1571, 1575 (D.Minn.1987); *McCalden v. California Library Ass'n,* 955 F.2d 1214, 1223 (9th Cir. 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 2306, 119 L.Ed.2d 227 (1992). Because Plaintiff has failed to establish a claim for conspiracy under section 1985(3), her section 1986 claim also fails as a matter of law.

**V. State Law Claims**

In addition to the federal civil rights claims, Plaintiff alleges several state common law claims in Counts IV through IX of her complaint. After dismissing jurisdiction-conferring claims, a federal district court may exercise supplemental jurisdiction over "all other claims that are so related to claims in

the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) ("The state and federal claims must derive from a common nucleus of operative fact."); *Rheuport v. Ferguson,* 819 F.2d 1459, 1467 n. 13 (8th Cir.1987).

The decision to exercise supplemental jurisdiction is within the sound discretion of the district court. *Hasset v. Lemay Bank & Trust Co.,* 851 F.2d 1127, 1130 (8th Cir.1988). Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction where it has dismissed all claims over which it had original jurisdiction.

In *Gibbs,* the Supreme Court stated that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. More recently the Supreme Court stated,

> a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendant state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988).

In this case, Plaintiff filed suit both in state district court and federal district court. On March 18, 1994, the state district court granted summary judgment in favor of Defendants on all counts and ordered entry of judgment of dismissal against Plaintiff. This case involves the identical state law issues which the state district court dismissed. The Minnesota Court of Appeals presents the proper forum for resolution of those issues should Plaintiff choose to appeal. Retaining jurisdiction over the state claims would duplicate the efforts of the state district court and possibly the Minnesota Court of Appeals. Exercising jurisdiction, therefore, would not further the goals of supplemental jurisdiction, namely, to promote judicial economy and avoid separate resolution of matters evolving from the same facts. As the Court will dismiss the jurisdiction-conferring claims on summary judgment before trial, the Court has not expended significant resources warranting the retention of jurisdiction. For all of these reasons, the Court declines to exercise supplemental jurisdiction over Counts IV through IX of Plaintiff's complaint. Those counts will be dismissed without prejudice.

## CONCLUSION

Based upon the foregoing and all the files, records and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Defendant's motion for summary judgment is **GRANTED;**

2. Counts I, II and III are **DISMISSED WITH PREJUDICE;** and

3. Counts IV through IX are **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**