**Angela HINKLEY, Plaintiff,**

v.

**Charles BAKER, Defendant.**

**No. 99–CV–286–B.**

United States District Court, D. Maine.

Nov. 21, 2000.

---

Sumner H. Lipman, Lipman & Katz, Augusta, ME, Tracie L. Adamson, Lipman & Katz P.A., Augusta, ME, for Angela Hinkley, plaintiff.

J. William Druary, Jr., Alton C. Stevens, Marden, Dubord, Bernier & Stevens, Waterville, ME, Robert E. Sandy, Sherman & Sandy, Waterville, ME, for Charles Baker, defendant.

## ORDER REGARDING DEFENDANT'S MOTION TO DISMISS

SINGAL, District Judge.

Before the Court is Defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (Docket # 8). Alleging that Defendant sexually molested her while she was a child, Plaintiff asserts claims against Defendant under 42 U.S.C. § 1983, as well as Maine state law claims for assault, intentional infliction of emotional distress, negligent infliction of emotional distress and punitive damages. In his Motion to Dismiss, Defendant specifically challenges Counts I, II and IV. For the reasons discussed herein, Defendant's Motion is GRANTED with regard to Count II, and DENIED for all other Counts.

## I. STANDARD OF REVIEW

Generally, a court may dismiss a claim under Fed.R.Civ.P. 12(b)(6) only if it clearly appears that, on the facts alleged, the plaintiff cannot recover on any viable theory. *See Gonzalez–Morales v. Hernandez–Arencibia,* 221 F.3d 45, 48 (1st Cir.2000). When considering a motion to dismiss, a court must accept as true all of a plaintiff's well-pleaded factual averments and indulge every reasonable inferences in the plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir. 1990). Pursuant to this standard, the Court lays out the facts of the case below.

## II. BACKGROUND

Plaintiff, Angela Hinkley, was born on December 27, 1975. In 1981, Hinkley began attending first grade at Shirley Elementary School. Now a resident of Greenville, Maine, she was about five or six years old at the time. Defendant, Charles Baker, was Hinkley's teacher. Baker taught kindergarten through third grade at Shirley Elementary, a two-room schoolhouse.

In her Complaint, Hinkley alleges that between approximately 1982 and 1985, Baker often touched her and other students in a sexually inappropriate manner. Specifically: (1) Baker would hug and squeeze Hinkley while kissing her face and nibbling her ears; (2) Baker would stand behind Hinkley, place his hand inside the front of her shirt, and feel her bare chest; (3) Baker would order Hinkley and other students to rub his back and comb his hair; (4) Baker would take Hinkley to sit on a small bed in the back of the classroom for sick students, and there he would hug her, kiss her ears, and blow in her ears and down her neck; and (5) while sitting on the sick bed, Baker would order Hinkley to stroke his neck and back. In addition, Baker occasionally would take Hinkley sledding. While sledding, Baker would make Hinkley sit between his legs, with her back and buttocks pressed against his groin. When the sled would stop, Baker would roll over on top of Hinkley, and remain laying on top of her for an extended period of time.

A decade and a half later, on December 13, 1999, Hinkley filed her Complaint against Baker, alleging violations of her Due Process rights, actionable under section 1983 of the Civil Rights Act (Count

I).[1] As well, Hinkley seeks damages through three common law claims: assault (Count II), intentional infliction of emotional distress (Count III) and negligent infliction of emotional distress (Count IV). In addition, Hinkley claims that Baker should be ordered to pay punitive damages (Count V). Baker specifically argues that the Court should dismiss Counts I, II and IV.[2] The Court now considers those counts.

## III. DISCUSSION

### A. Section 1983 (Count I)

■ Section 1983 of the Civil Rights Act, 42 U.S.C. §§ 1981—2000bb-3 creates a cause of action against persons acting "under color of any statute, ordinance, regulation, custom, or usage …" who are responsible for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws …". 42 U.S.C. § 1983. Thus, to state a claim under section 1983, "a plaintiff must allege (1) the violation of a right protected by the Constitution or laws of the United States and (2) that the perpetrator of the violation was acting under color of law." *Cruz–Erazo v. Rivera–Montanez*, 212 F.3d 617, 621 (1st Cir.2000).

Defendant does not contest the fact that as a schoolteacher, he acted under the color of law. *See Doe v. Rains County Independent School Dist.*, 66 F.3d 1402, 1406–07 (5th Cir.1995) (noting that schoolteacher who molested child while at school acted under color of law). Rather, Defendant argues that (1) the alleged conduct is not severe enough to amount to a violation of Plaintiff's constitutional rights and (2) Defendant should be protected from a section 1983 claim by qualified immunity.

### 1. Severity of the Conduct

■ Federal courts have recognized that "the right to be free from sexual abuse at the hands of a public school teacher is clearly protected by the Due Process Clause of the Fourteenth Amendment." *Doe v. Claiborne County,* 103 F.3d 495, 506 (6th Cir.1996) (*citing Abeyta v. Chama Valley Independent School Dist.*, 77 F.3d 1253, 1255 (10th Cir.1996); *Doe v. Taylor Independent School Dist.*, 15 F.3d 443, 451–52 (5th Cir.1994); *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 722 (3rd Cir.1989)). This principle stems from *Hall v. Tawney*, 621 F.2d 607 (4th Cir.1980), in which the Fourth Circuit held that a teacher corporally punishing a student could amount to a section 1983 claim. *See id.* at 613. The *Hall* court based its holding on "the right to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court." *Id.*

Relying on *Hall*, Defendant contends that his behavior was not so brutal, demeaning or harmful as to shock the conscience. After all, Plaintiff does not allege that Defendant had sexual intercourse with her, although many section 1983 cases involve teachers having intercourse with their students. *See Claiborne*, 103 F.3d at 501 (teacher having sexual intercourse with student); *Rains*, 66 F.3d at 1406–07 (same); *Taylor*, 15 F.3d at 451–52 (same); *Doe v. Manson*, No. 99–262–P, 2000 WL 893396 at *1 (D.Me. June 22, 2000) (same). As well, Defendant asserts that because Plaintiff was only a young child at the time of the alleged molestation, her breasts had not yet developed, so touching her chest did not violate her bodily integrity. Final-

---

1. In the Complaint, Hinkley names Baker as a defendant in both his individual and official capacity. The parties now agree that Baker is a defendant only in an individual capacity.

2. Although Defendant requests that the Court dismiss all of Plaintiff's claims, Defendant does not address Counts III or V in the Mo-

tion to Dismiss. In response to Count III, Defendant has filed a Motion for Partial Summary Judgment on Plaintiff's claim of intentional infliction of emotional distress. (*See* Docket # 9.) Therefore, the Court ignores Counts III and V for the purposes of the Motion to Dismiss.

ly, Defendant makes the argument that all of the alleged conduct could have innocent explanations.

The Court disagrees with Defendant's arguments, even though precedent may not be clear as to what types of sexual misconduct are sufficient to state a claim under section 1983. Although many of the opinions explicitly describe the behavior, many of the opinions use only vague language to characterize the events that occurred. *See Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 722 (3rd Cir. 1989) (teacher and high school student engaged in "various sexual acts"); *Doe v. School Admin. Dist. No. 19*, 66 F.Supp.2d 57, 60–61 (D.Me.1999) (teacher committed "sexual misconduct" and had "sexual relations" with high school students); *Wilson v. Webb*, 869 F.Supp. 496, 496 (W.D.Ky. 1994) (teacher "sexually harassed and molested" two high school students); *Sowers v. Bradford Area Sch. Dist.*, 694 F.Supp. 125, 127–28 (W.D.Pa.1988) (teacher "sexually molested," committed "sexual abuse" and did "sexually molest and/or harass" high school students), *vacated, Smith v. Sowers*, 490 U.S. 1002, 109 S.Ct. 1634, 104 L.Ed.2d 150 (1989). From such opinions, it is impossible to discern exactly what happened that shocked the conscience, because the gravity of the conduct was not in dispute in these cases.

Only a few cases have examined whether the defendant's alleged conduct was sufficient to shock the conscience. In *Abeyta*, the Tenth Circuit held that it did not amount to sexual abuse actionable under section 1983 when a teacher repeatedly called a twelve-year old girl a "prostitute" in front of the class for a period of several weeks. *See id.* at 1255–56. In arriving at this conclusion, the court found it significant that there had been no allegations of "sexual assault, molestation, or touching of any sort." *Id.* at 1255. In *Boldthen v. Indep. School Dist. No. 2397*, 865 F.Supp.

1330 (D.Minn.1994), the court held that a twelve-year old plaintiff had no section 1983 claim against a school principal for patting her on the back or on the hand, even though the principal knew that the student feared her. *See id.* at 1334, 1337. Although the plaintiff in that case cited several cases of sexual abuse supporting her section 1983 claim, the plaintiff did not allege that this patting was at all sexual in nature. *See id.* at 1337.

On the other hand, in *Doe v. Beaumont I.S.D.*, 8 F.Supp.2d 596 (E.D.Tex.1998), the court found that a teacher's alleged touching of the plaintiffs' breasts could constitute sexual abuse that shocked the conscience. *See id.* at 606–07. In *Beaumont*, two eleven year-old fourth grade girls complained that one of the schoolteachers would drape his arm over their shoulders, with his hand touching their chest areas. *See id.* at 602–03. The defendant argued that this type of touching did not rise to the level of sexual abuse that shocked the conscience. *See id.* at 605. After analyzing the relevant case law, the court stated that it felt uncomfortable "gauging social norms" of whether touching a girl's breasts was shocking. *See id.* at 607. Denying summary judgment, the court held that it would hear all of the evidence before deciding whether the alleged conduct could or could not rise to a level that shocks the conscience. *See id.*

■ The within Plaintiff argues that Defendant's conduct resembles the behavior exhibited by the teacher in *Beaumont.* Defendant states that *Beaumont* was decided wrongly because the touching in that case does not shock the conscience, pursuant to the *Hall* standard. *See Hall*, 621 F.2d at 613; *Beaumont*, 8 F.Supp.2d at 607. Rather, Defendant implies that genital touching or sexual intercourse is necessary to state a claim for sexual abuse under section 1983.[3] This Court disagrees,

---

**3.** To the extent that Defendant suggests that an allegation of genital touching is necessary to state a section 1983 claim, Plaintiff has

alleged that "While sledding, Defendant would make Plaintiff sit between his legs, with Plaintiff's back and/or buttocks pressed

and finds that *Beaumont* was decided correctly: a teacher touching a girl's breasts can shock the conscience. *See Beaumont,* 8 F.Supp.2d at 607.

Next, Defendant argues that at the time of the alleged conduct, Plaintiff was a prepubescent child with undeveloped breasts, so touching her chest area cannot be considered sexual abuse that shocks the conscience.[4] In *Beaumont,* there was no discussion as to whether or not the eleven year-old plaintiffs were developed at the time of their alleged molestation. Although the court did refer to the plaintiffs as having "breasts" once in the opinion, the court otherwise used the phrase "chest area" to describe where the teacher touched them. *See Beaumont,* 8 F.Supp.2d at 602–03. Thus, it was not important to the *Beaumont* court whether or not the plaintiffs were developed. *See id.* Furthermore, the defendant in *Beaumont* touched the girls' chest areas over their clothing, while the within Plaintiff accuses Defendant of reaching underneath her shirt to touch her chest. *See id.* Moreover, the Court agrees with Plaintiff's argument that a young girl understands her chest to be one of her "private parts". (Pl.'s Obj. to Def.'s Mot. to Dismiss at 8 (Docket # 25).) Whether or not the within Plaintiff was developed during the time of the alleged incidents, Defendant's alleged conduct—which included not only touching her bare chest, but also kissing, nibbling, rubbing and holding Plaintiff against his body—violated her bodily integrity.

██ Finally, Defendant argues that all of the alleged conduct—the neck kissing, ear nibbling, ear blowing, back rubbing, hair combing, chest touching and sledding—could have innocent explanations. For motions to dismiss for failure to state a claim, however, the standard is to accept the plaintiff's allegations as true and to give the plaintiff the benefit of every reasonable inference. *See Cooperman v. Individual Inc.,* 171 F.3d 43, 46 (1st Cir. 1999); *Correa–Martinez,* 903 F.2d at 52. Thus, the Court must accept Plaintiff's characterization of the facts: that the incidents of physical contact were not innocent. Accepting Plaintiff's allegations, the Court concludes that Defendant violated Plaintiff's bodily integrity in contravention of the Due Process Clause of the Fourteenth Amendment.

2. Qualified Immunity

██ Next, Defendant argues that the section 1983 claim must be dismissed based on the doctrine of qualified immunity. This doctrine immunizes state actors from legal action if they objectively had no reason to know that their conduct violated federal law. *See, e.g., Buenrostro v. Collazo,* 973 F.2d 39, 42 (1st Cir.1992).

> Through the medium of qualified immunity, the law strives to balance its desire to compensate those whose rights are infringed by state actors with an equally compelling desire to shield public servants from undue interference with the performance of their duties and from threats of liability which, though unfounded, may nevertheless be unbearably disruptive.

*Id.* (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Hence, state officials exercising discretionary authority are entitled to qualified immunity insofar as their conduct does not transgress clearly established constitutional or federal statutory rights of which a reasonably prudent official should have been aware." *Iacobucci v. Boulter,*

---

firmly against Defendant's groin." (Pl.'s Compl. ¶ 10(d) (Docket # 1).) *See R.M.R. v. Muscogee County Sch. Dist.,* 165 F.3d 812, 814 (11th Cir.1999) (noting that teacher touched middle school student's groin, then placed child's hand on teacher's groin, with implication that the touching was through their clothing).

4. The Court notes that the current record does not reflect whether or not Plaintiff had developed breasts at the time of the alleged incidents.

193 F.3d 14, 21 (1st Cir.1999) (*quoting Buenrostro,* 973 F.2d at 42).

■ However, just because a court has not previously found that a specific act is unlawful, that does not mean that those acting under color of law may commit such acts with impunity. See *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Rather, "in the light of pre-existing law the unlawfulness must be apparent." *Id.* "Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate...." *Harlow,* 457 U.S. at 819, 102 S.Ct. 2727.

Defendant argues that between 1982 and 1985, it was not clearly established that his conduct violated Plaintiff's constitutional right to bodily integrity, so qualified immunity protects him from Plaintiff's section 1983 claims. However, *Hall,* decided in 1980, put educators on alert that they were under a constitutional duty not to violate the bodily integrity of their students. See *Hall,* 621 F.2d at 613; *see also Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (noting that there is a historic liberty "to be free from and to obtain judicial relief, for unjustified intrusions on personal security."). Accepting all alleged facts and drawing all reasonable inferences in Plaintiff's favor, a reasonable person in Defendant's position would have known that his conduct violated Plaintiff's bodily integrity. See *Stoneking,* 882 F.2d at 726–27 (3rd Cir.1989) (denying qualified immunity even though prior precedent had not yet established that sexual molestation of schoolchildren

amounted to a violation of their constitutional rights);[5] *Beaumont I.S.D.,* 8 F.Supp.2d at 607, 613 (applying qualified immunity to school principal, but, without discussion, not applying it to teacher who molested student). Therefore, the Court finds that Defendant is not entitled to qualified immunity.

Thus, the Court declines to dismiss Plaintiff's section 1983 claim.[6]

**B. Assault (Count II)**

■ Regarding Plaintiff's assault claim, Defendant argues that the statute of limitations has run on bringing such a tort claim. Because the alleged conduct occurred while Plaintiff was a minor, the statute of limitations did not begin to run until she reached the age of majority, on December 27, 1993. See 14 M.R.S.A. § 853. Assault claims have a two-year statute of limitations. See 14 M.R.S.A. § 753. According to Defendant, Plaintiff's claim for assault ran on December 27, 1995.

Plaintiff argues that she is entitled to an extended limitations period because the assault involved sexual misconduct. See 14 M.R.S.A. § 752–C.

> Actions based upon sexual intercourse, as defined in Title 17–A, section 556, subsection 1–B, or a sexual act, as defined in Title 17–A, chapter 11, with a person under the age of majority must be commenced within 12 years after the cause of action accrues, or within 6 years of the time the person discovers or reasonably should have discovered the harm, whichever occurs later.

**5.** In discussing qualified immunity regarding abuse that occurred from 1980 to 1985, the *Stoneking* court noted that

> It may seem ludicrous to be obliged to consider whether it was "clearly established" that it was impermissible for school teachers and staff to sexually molest students. Nonetheless, we construe the proper inquiry as whether it was established that the students' rights were constitutionally based. Applying this standard, we reiterate the conclusion we reached [in a prior

> order] that the constitutional right [the plaintiff] alleges, to freedom from invasion of her personal security through sexual abuse, was well-established at the time the assaults upon her occurred.

*Stoneking,* 882 F.2d at 726.

**6.** Because the Court permits Plaintiff's section 1983 claim to proceed, Defendant's argument that this Court should decline jurisdiction over the case is irrelevant.

14 M.R.S.A. § 752–C. Plaintiff's argument, however, fails because the conduct she alleges does not fall within the specific definitions of "sexual intercourse" or "sexual act" provided in Title 17–A. According to statute, " 'sexual intercourse' means any penetration of the female sex organ by the male sex organ." 17–A M.R.S.A. § 556(1–B). Plaintiff does not allege vaginal penetration. "Sexual act" means:

(1) Any act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other;

(2) Any act between a person and an animal being used by another person which act involves direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other; or

(3) Any act involving direct physical contact between the genitals or anus of one and an instrument or device manipulated by another person when that act is done for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact.

A sexual act may be proved without allegation or proof of penetration.

17–A M.R.S.A. § 251(1)(C). When Defendant held Plaintiff in his lap as they sledded together, Plaintiff alleges that Defendant held her back and buttocks against his groin area. Although this arguably may constitute contact between the genitals and anus of two persons, it was not direct contact because both persons were clothed at the time, so section 251(1)(C)(1) does not apply. *Cf.* 17–A M.R.S.A. § 251(D) (defining the lesser "sexual contact" as including "any touching of the genitals or anus, directly or through clothing . . ."). The conduct of which Plaintiff complains does not fall within the definitions of either sexual intercourse or sexual act, and therefore, the extended limitations period does not apply. Bound by the two-year limitations period, Plaintiff's assault claim is time-barred.

C. Negligent Infliction of Emotional Distress (Count IV)

Defendant argues that Plaintiff should not be able to recover under negligent infliction of emotional distress ("NIED") because Maine state law does not recognize NIED as an independent tort. Indeed, numerous Maine Supreme Judicial Court cases have held that a plaintiff may not recover under a theory of NIED unless there is also an independent, underlying tort or contract claim. *See, e.g., Gayer v. Bath Iron Works Corp.,* 687 A.2d 617, 621 (Me.1996) ("Recovery for negligent infliction of emotional distress is premised on the existence of an underlying tort or, in limited circumstances, contract breach."); *Devine v. Roche Biomedical Labs., Inc.,* 637 A.2d 441, 447 (Me.1994) ("emotional distress alone may constitute compensable damage, but was not meant to create a new ground for liability . . .").

These rulings, however, are inconsistent with *Gammon v. Osteopathic Hosp. of Maine, Inc.,* 534 A.2d 1282 (Me.1987), in which the Supreme Judicial Court "rejected as 'arbitrary' the requirement that a NIED claim must be based on an independent underlying tort and held that proof of negligently inflicted emotional distress itself was sufficient." *Cameron v. Pepin,* 610 A.2d 279, 281 (Me.1992) (*explaining Gammon,* 534 A.2d at 1285). Indeed, the court has permitted several plaintiffs to maintain their NIED claims independent of any other torts. *See, e.g., Bolton v. Caine,* 584 A.2d 615, 618 (Me.1990) (allowing plaintiff to bring NIED claim although all other claims had failed); *Gammon,* 534 A.2d at 1285 (same); *Rowe v. Bennett,* 514 A.2d 802, 806–07 (Me.1986) (allowing plaintiff to bring NIED claim without any other causes of action).

The Supreme Judicial Court, however, appears to have clarified the apparent discrepancy in its recent decision of *Bryan R.*

*v. Watchtower Bible, Tract Society of New York, Inc.,* 738 A.2d 839 (1999). In *Bryan R.,* the court stated

> Although it is no longer necessary for a plaintiff to plead or prove the existence of a separate tort in order to assert a claim for negligent infliction of emotional distress, a plaintiff must nonetheless demonstrate that the defendant owed him a duty of care and must prove the breach of that duty of care by the defendant.... The removal of the necessity for a plaintiff to allege an underlying tort or physical impact did not create a new cause of action, but simply removed the barriers that prevented plaintiffs from proceeding with claims already recognized in Maine, when the only damage suffered was to the psyche.

*Id.* at 848 (internal citations omitted). Ultimately, the Law Court held that

> [o]nly where a particular duty based upon the unique relationship of the parties has been established may a defendant be held responsible, absent some other wrongdoing, for harming the emotional well-being of another. *See, e.g., Bolton v. Caine,* 584 A.2d 615, 618 (Me. 1990) (holding that a physician-patient relationship gives rise to a duty to avoid emotional harm from failure to provide critical information to patient); *Gammon v. Osteopathic Hosp. of Me.,* 534 A.2d 1282, 1285 (Me.1987) (holding that a hospital's relationship to the family of deceased gives rise to a duty to avoid emotional harm from handling of remains); *Rowe v. Bennett,* 514 A.2d 802, 806–07 (Me.1986) (holding that the unique nature of psychotherapist-patient

relationship gives rise to a duty of care to the patient).

*Bryan R.,* 738 A.2d at 848 (finding that church member could not maintain NIED suit against church because no special duty exists between churches and their members).

■ According to this new interpretation of the court's case law, for a plaintiff to successfully state a claim for NIED, she must establish either (1) an underlying tort or (2) a unique relationship between herself and the defendant. *See id.* Indeed, a student and her teacher share a unique relationship. *See, e.g., New Jersey v. T.L.O.,* 469 U.S. 325, 349–50, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (recognizing a "special relationship between teacher and student", in which the "attitude of the typical teacher is one of personal responsibility for the student's welfare as well as for his education.") (Powell, J., concurring); *Bridges v. MacLean–Stevens Studios, Inc.,* 201 F.3d 6, 11 (1st Cir.2000) ("Unquestionably, the schools and the students enjoy a special relationship of trust.") (*quoting Stephen Jay Photography, Ltd. v. Olan Mills, Inc.,* 903 F.2d 988, 993 (4th Cir.1990)); *see also* 17–A M.R.S.A. § 106(2) (permitting teachers to use reasonable force to discipline their students); 17–A M.R.S.A. §§ 253(F), 253(G), 254(C), 255(F) (heightening the criminal liability for teachers who have sexual contact or commit sexual acts with their students). Because of the teacher-student relationship between Plaintiff and Defendant, Plaintiff need not allege or prove a separate, underlying tort to maintain her NIED claim.[7]

---

7. Defendant also suggests that according to *Rippett v. Bemis,* 672 A.2d 82 (Me.1996), any potential damages under the NIED claim could be subsumed by Plaintiff's other claims. *See id.* at 87–88. *Rippett,* however, is not applicable because the facts of that case were particular to defamation cases. *See id.* In that case, the defendant's alleged defamatory statement, as a matter of law, was either slander per se or a privileged statement. *See id.* If the court found it to be privileged, it would have been privileged in regards to the NIED claim as well. *See id.* On the other hand, if the court had found the statement not to be privileged, then plaintiff's potential damages under a defamation theory were equal to potential damages under NIED. *See id.* Thus, the specific facts of *Rippett* enabled the court to neatly subsume the NIED·claim, and *Rippett* does not apply to the instant case. *See id.*

■ Moreover, Plaintiff has also alleged an independent tort. Thus far, the Court has not dismissed Counts I and III (section 1983 claim and intentional infliction of emotional distress), which could stand as underlying torts in support of her NIED claim. *See, e.g., Palleschi v. Palleschi,* 704 A.2d 383, 384–6 (Me.1998) (upholding verdicts of assault, intentional infliction of emotional distress and NIED).

Therefore, based on the reasons stated above, the Court finds that Plaintiff has successfully stated a NIED claim.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion is GRANTED in regard to Count II, and DENIED for all other Counts. Count II is DISMISSED WITH PREJUDICE.

SO ORDERED.