Jane DOE, et al., Plaintiffs,

v.

BEAUMONT I.S.D., et al., Defendants.

No. 1:95–CV–207.

United States District Court,
E.D. Texas,
Beaumont Division.

May 8, 1998.

Laurence Wade Watts, Carleton C. Casteel, Watts & Associates, Houston, TX, Mark G. Lazarz, Shellist Lore & Lazarz, Houston, TX, for Jane Doe, Sue Doe, Sam Doe.

Tanner Truett Hunt, Jr., Melody G. Thomas & Chris Wohleb, Wells, Peyton, et al, Beaumont, TX, for Beaumont Independent School District, Norman Traylor.

Lawrence Louis Germer, Germer & Gertz, Beaumont, TX, for Marlot Shook.

Robert J. Hambright, Orgain Bell & Tucker, Beaumont, TX, for Shedrick Evans.

## MEMORANDUM OPINION AND ORDER

SCHELL, Chief Judge.

Before the court are the following:

a) Defendants Beaumont Independent School District ("BISD") and Dr. Norman Traylor's ("Traylor") Motion for Summary Judgment and Brief in Support, filed on February 6, 1998. Plaintiffs filed a Brief in Opposition ("Plaintiffs' Response to BISD") on April 21, 1998.[1] Defendants BISD and Traylor filed a Reply to Plaintiffs' Response ("BISD's Reply to Plaintiffs' Response") on April 28, 1998.

b) Defendant Shedrick Evans' ("Evans") Motion for Summary Judgment, filed on February 6, 1998. Plaintiffs filed a Brief in Opposition ("Plaintiffs' Response to Evans") on April 21, 1998.

After consideration of the motions, responses, and applicable law, the court is of the opinion that Defendants BISD and Traylor's Motion should be GRANTED, and Defendant Evans' Motion should be GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

#### A. The alleged abuse and the events surrounding April 14, 1994

Jane Doe, Sue Doe and Sam Doe brought this action as next friends of their minor daughters Janet Doe and Sally Doe against Defendants BISD, Traylor, and Evans. During the 1993–94 school year, Janet Doe and Sally Doe were eleven year-old fourth grade students at Homer Elementary School, enrolled in the class of Marlot Shook.[2] Plaintiffs allege Evans, a fifth grade teacher at Homer Elementary School, sexually assaulted Janet and Sally by fondling their breasts.

In depositions taken during the course of this cause of action, both girls described the contact between Mr. Evans and themselves. According to Janet Doe, Evans would often speak with her and the other girls in Janet's class while they were in the hallways. However, she and Evans were never alone together. Depo. of Janet Doe at 14–16. Janet testified that sometimes during these conversations, Evans would touch her by draping his hand over her shoulders, with his hand "leaning over" onto her chest area. *Id.* at 18. This contact allegedly occurred three or four times. *Id.* at 20. No other physical contact occurred, although Janet testified that she

---

1. From the bench at a case management conference held on April 6, 1998, and in a subsequent written Order dated April 6, 1998, the court granted Plaintiffs' Motion to File Out of Time Responses to Defendants' Motions for Summary Judgment.

2. Shook was originally named as a defendant in this case. She filed a Motion for Summary Judgment on February 6, 1998. Plaintiffs did not file a response. On April 29, 1998, the court signed an Order in Stipulation of Dismissal, dismissing all claims against Marlot Shook in this case. Subsequently, the court signed an Order finding Shook's Motion for Summary Judgment MOOT.

perceived that Evans was flirting with her. *Id.* at 19.

After Janet perceived this "flirting" and that Evans was touching her inappropriately, she alleges that she told her teacher, Marlot Shook. *Id.* at 20–21. Janet admitted that she did not tell Shook that Evans touched her. She only told Shook that Evans made her feel uncomfortable and that he was flirting with the girls in the class. *Id.* at 21, 74. According to Janet, Shook replied to her reports of Evans' flirtation by telling her, "I don't want to hear it" or that Janet was "off-task." *Id.* at 20–21. Janet testified that she complained about Evans "once or twice, probably," to Shook, but that Shook took no action. *Id.* at 21. According to Janet, nothing came of her reports about Evans until April 14, 1994. *Id.* at 65.

The deposition of Sally Doe is relatively consistent with that of Janet. Sally also states that she was never alone with Evans, and that she and the other girls in her class would see Evans at various times during the school day. Depo. of Sally Doe at 18–22. According to Sally, the complained-of conduct occurred only in the hallways of the school when the students were lining up for the buses at the end of the day. *Id.* at 22, 25. There was no other time, according to Sally, that Evans touched any of the girls in her class. *Id.* at 25–26. Evans draped his hand across Sally's shoulders once, *id.* at 22, and asked Sally whether or not she liked his car. *Id.* The contact only happened one time. *Id.* When he draped his hand across her shoulders, his hand fell down onto her "upper shoulder, chest area." *Id.* at 26–27.[3] Sally did not report the contact to Shook, and

she did not tell anyone about the incident until April 14, 1994. *Id.* at 48.

On April 14, 1994, Ms. Shook's class was being taught by a substitute teacher. A girl in the class (not one of the plaintiffs) began to cry. Depo. of Janet Doe at 65–66. Apparently, the reason for her distress was Evans. The other girl allegedly told the substitute teacher something regarding Evans, and the substitute teacher questioned the other girls in the class about their contact with him. Depo. of Sally Doe at 31. At this point, both Janet and Sally told the substitute teacher about Evans' physical contact with them. The substitute teacher instructed each girl in the class to write down the substance of their contacts with Evans. *Id.* at 31. The substitute teacher then sent the girls to Dr. Norman Traylor, principal of Homer Elementary, to report the conduct of Evans. *Id.* at 32–33.

After the girls made a report to Traylor, he immediately suspended Evans. Aff. of Dr. Norman Traylor at 1, para. 1 ("Traylor Affidavit"). Traylor claims that he had no knowledge of any previous charges of sexual abuse by Plaintiffs against Evans. *Id.* at 1, para. 2. Evans was suspended from Homer Elementary for the remainder of the 1993–1994 school year, while criminal charges against him were pending. *Id.* at 1, para. 2.[4] Before Janet and Sally's report to Traylor, BISD had already determined that Evans' contract would not be renewed for the next academic year. Pls.' Exs. to and Documents in Support of Pls.' Briefs in Opp. ("Pls.' Exs."), Ex. E. That decision was memorialized in a letter dated March 24, 1994, before Janet and Sally met with Traylor. Shortly after his suspension, on May 4, 1994, Evans

---

**3.** There is no allegation that Evans massaged the girls in any way or initiated any further contact other than draping his arm across their shoulders and letting his hand fall onto their chest areas. Depo. of Janet Doe at 18–19; Depo. of Sally Doe at 27.

**4.** The present action was stayed pending the criminal prosecution of Evans. The criminal charges have since been dropped, thus allowing the case to proceed. The parties dispute the reason why the criminal charges against Evans were dropped. It is Defendants' contention that Janet and Sally recanted their accusations. BISD's Mot. for S.J. at 2. It is Plaintiffs' conten-

tion that the prosecutors in the criminal case were simply exercising their prosecutorial discretion. Pls.' Resp. to BISD's Mot. for S.J. at 4 n. 1. In deciding a motion for summary judgment, the court must examine all evidence in the light most favorable to the non-movant, in this case the plaintiffs. Since the court has no evidence before it that Janet and Sally recanted, the court will assume that the allegations of Janet and Sally reflected in the depositions are true. *See* F.R.C.P. 56. Neither the criminal charges nor their disposition are relevant to the merits of this case.

submitted his resignation from BISD, effective May 5, 1994. *Id.*, Ex. F.

Janet claims that after the incident with Evans she had trouble sleeping, and that it was necessary for her to sleep with her mother until she was thirteen years old. Depo. of Janet Doe at 75. Further, parents of both of the girls have submitted affidavits stating that their daughters were affected by the contact with Evans. Among other alleged injuries, both girls are said to be more withdrawn and afraid of crowds. Supp. Aff. of Jane Doe; Aff. of Sue Doe, Pls.' Exs ., Ex. H; Aff. of Sam Doe, *Id.*, Ex. I.

### B. Evans' Conduct as a Teacher

Plaintiffs have submitted numerous memoranda sent from Traylor to Evans during Evans' employment at Homer Elementary. These documents span the entire length of Evans' tenure at the school. Pls.' Exs., Ex. C. In sum, these documents reflect repeated warnings to Evans about his use of corporal punishment in the classroom, warnings about Evans' use of inappropriate verbal and physical threats towards misbehaving students, and a general dissatisfaction with Evans' job performance.

### C. The alleged prior instance of sexual assault

In one memorandum dated August 30, 1993, Traylor states that he received a report from a student, about Evans.[5] According to the memorandum, on August 27, 1993, before the incidents forming the basis of this suit, Evans "looked under [the reporting student's] dress, hugged her, and told her that she was a fine baby." Pls.' Exs., Ex. C, Bates Stamp # 160. Plaintiffs allege that this report shows that Traylor knew of a previous incident where Evans sexually assaulted a student.

However, the memorandum also shows that Traylor held a conference regarding the incident, and that Evans and the child's mother were present at the conference. *Id.* At the conference, the child's mother admitted that "the child had been sexually abused and that this may have been the reason for

part of the story." *Id.* After the conference, Traylor warned Evans in writing about his disciplinary techniques, and stated that further non-compliance with school policy by Evans would result in corrective action. *Id.*

### D. Plaintiffs' Claims

It is against this backdrop that Plaintiffs bring their claims. Plaintiffs claim that Evans is liable for the assault or assaults that allegedly took place, and that were first reported to Traylor on April 14, 1994. Plaintiffs also allege that Defendants BISD and Traylor are liable for hiring Evans in the first place, for failing to report previous incidents about which they allegedly had knowledge, for failing to report the incidents involving Janet and Sally, and for otherwise failing to take any action that would have prevented the assault of Janet and Sally.

Plaintiffs assert claims for: (1) deprivation of their rights under the Fourteenth Amendment's Due Process and Equal Protection Clauses, in violation of 42 U.S.C. § 1983, against all three defendants; (2) violations of Title IX of the Education Amendments of 1972, 20 U.S.C. Section 1681–88, against all three defendants; (3) intentional infliction of emotional distress, against Traylor in his individual capacity and against Evans; and (4) assault and battery, against Evans. The court will examine all of Plaintiffs' claims according to the standard for summary judgment as set out in *Karr v. City of Beaumont*, 950 F.Supp. 1317, 1320–21 (E.D.Tex.1997).

### II. EXCLUDED EVIDENCE REGARDING EVANS' CRIMINAL HISTORY

Plaintiffs have submitted, along with Evans' employment history, a series of court documents and arrest warrants. The documents are:

a) An arrest warrant and supporting affidavit, charging Evans with misdemeanor theft by check. The offense charged occurred on March 3, 1993, but the affidavit for arrest was not sworn to until October 8, 1993;

b) An arrest warrant and supporting affidavit, charging Evans with making a false statement to the Texas Employment Com-

---

**5.** The student who made the report is not a plaintiff in this case.

mission in an application for unemployment benefits. The offense charged occurred on June 7, 1992, but the affidavit for arrest was not sworn to until March 11, 1994;

c) An arrest warrant and supporting affidavit, charging Evans with misdemeanor theft by check. The offense charged occurred on May 24, 1993, but the affidavit for arrest was not sworn to until April 21, 1994.

■ Plaintiffs argue that these documents are relevant because they show that BISD hired and retained a teacher with such a varied criminal history as to place Janet and Sally Doe's constitutional rights in danger. Defendants argue that these documents are not relevant because they show a criminal history consisting of misdemeanors that have no relation to the allegations of sexual abuse brought by Plaintiffs.

The court agrees with Defendants on this issue. The documents are irrelevant under F.R.E. 401 and 415, and will not be considered by the court. Further, the documents represent character evidence that is inadmissible under F.R.E. 404(b).

### III. PLAINTIFFS' § 1983 CLAIMS UNDER SUBSTANTIVE DUE PROCESS

■ Plaintiffs allege a claim under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment rights of Due Process and Equal Protection under the laws. To prove a § 1983 claim, Plaintiffs must show (1) a violation of rights secured by the Constitution or laws of the United States; and (2) the alleged deprivation was committed by a person acting under color of state law. *Doe v. Hillsboro I.S.D.,* 81 F.3d 1395, 1402 (5th Cir.1996); *Doe v. Rains County I.S.D.,* 66 F.3d 1402, 1406 (5th Cir.1995).

■ The court will first examine Plaintiffs' Due Process claims. Students have a liberty interest in their personal safety and bodily integrity which is protected by the Due Process clause of the Fourteenth Amendment. *Doe v. Taylor I.S.D.,* 15 F.3d 443, 451 (5th Cir.1994) (en banc), *cert. denied sub. nom., Lankford v. Doe,* 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994). Those

rights are violated by sexual assault or abuse by a school employee. *Id.*

#### A. Plaintiffs' § 1983 claims against Evans

Plaintiffs claim that, sometime during or around February, 1994, Evans sexually assaulted Janet Doe and Sally Doe. In the deposition testimony recited above, Janet and Sally state that Evans draped his arms around their shoulders, with his hand falling somewhere on the "chest area" of Janet, and the "shoulder/upper chest" area of Sally. Depo. of Janet Doe at 17–19, 67–68; Depo. of Sally Doe at 26–28. Janet claims that such contact occurred three or four times for her, while Sally claims that the contact only occurred once for her. Depo. of Janet Doe at 68; Depo. of Sally Doe at 25–26. Plaintiffs have offered no evidence that Evans did anything other than what Janet and Sally stated in their deposition. *See supra* note 3.

Evans argues that these contacts with the girls are not enough to rise to the level of an invasion of their bodily integrity, and thus do not rise to the level of a violation of their substantive due process rights. Evans' Mot. for S.J. at 6–7. He argues that the United States Supreme Court has indicated that a violation of one's substantive due process rights does not arise unless the alleged conduct is of such magnitude that it " 'shocks the conscience' of federal judges." *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 1069–70, 117 L.Ed.2d 261 (1992). Plaintiffs argue that the alleged conduct does shock the conscience, is a violation of Janet and Sally's bodily integrity, and that a substantive due process violation has been shown for the purpose of precluding summary judgment.

■ It is for the court to decide, prior to a case being given to a jury, whether the alleged conduct is of such an egregious nature that it "shocks the conscience" and constitutes a violation of a person's bodily integrity. *Id.* 112 S.Ct. at 1069; *see also Canada v. Thomas,* 915 F.Supp. 145, 149 (D.Mo.1996) (state may not engage in conduct so intrusive of fundamental rights that it shocks the conscience, offends judicial notions of fairness, or is offensive to human dignity).

The issue that confronts the court, then, is whether the alleged conduct so shocks the conscience so as to constitute a violation of bodily integrity? As recited above, the Fifth Circuit has held that physical sexual abuse by a school employee violates a child's liberty interest in her bodily integrity. But, beyond a case by case analysis, the Fifth Circuit has not defined the degree of contact necessary before an act can be defined as "physical sexual abuse," or whether something less than "physical sexual abuse" can still be a violation of one's bodily integrity. Obviously, the rape of a student by a school employee qualifies as physical sexual abuse and as a violation of one's bodily integrity. *Hillsboro*, 81 F.3d at 1399, 1406. Inappropriate fondling has also been found to constitute physical sexual abuse under § 1983. *Gonzalez v. Ysleta I.S.D.*, 996 F.2d 745, 750 n. 6 (5th Cir.1993) (where teacher followed student over to water fountain, placed his hand inside her underwear and touched her vagina, parties conceded that physical sexual abuse occurred). Consensual sexual intercourse between a teacher and a minor student qualifies as physical sexual abuse, where the teacher abuses his position under the color of state law to engage in the sexual acts. *Rains County*, 66 F.3d at 1406; *Taylor*, 15 F.3d at 451–52.

In *Taylor*, the Fifth Circuit held that the sexual fondling of a fifteen-year-old school girl, and participation in sexual intercourse with the girl, was sufficient to violate the girl's liberty interest under substantive due process. *Taylor*, 15 F.3d at 451. In reaching this conclusion, the court quoted a corporal punishment case and held that "a deprivation of substantive due process [exists] when [the disputed event] is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." *Id.* (quoting *Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir.), *cert. denied*, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990)).

Evans argues that the cases of *Abeyta By and Through Martinez v. Chama Valley I.S.D.*, 77 F.3d 1253, 1256–57 (10th Cir.1996) and *Boldthen v. I.S.D. No. 2397*, 865 F.Supp. 1330, 1334 (D.Minn.1994), show that the level of touching alleged by Plaintiffs in this case is not sufficient, as a matter of law, to qualify as physical sexual abuse and cannot state a constitutional violation under § 1983. Evans' Mot. for S.J. at 8.

In *Abeyta*, a school official repeatedly referred to a twelve year old student as a "prostitute" over a month and a half time period. *Abeyta*, 77 F.3d at 1254. The Tenth Circuit held that the conduct did not "shock the conscience" so as to rise to the level of a constitutional violation. *Id.* at 1256–58. Similarly, in *Boldthen*, a student sued because a school employee, *inter alia*, "frequently touched [the student] by patting her on the back or hand although [the employee] knew that the Plaintiff feared her and that she should avoid all contact with Plaintiff." *Boldthen*, 865 F.Supp. at 1334. The *Boldthen* court ruled that the conduct did not shock the conscience because the touching could not be described as anything other than "friendly and consoling," no matter what the effect on the student. *Boldthen*, 865 F.Supp. at 1336 n. 2, 1337. Evans argues that his contact with Janet and Sally was a "small act[ ] of affection and encouragement," parallel to the conduct in *Boldthen*, and less offensive than the remarks in *Abeyta*. Evans' Mot. for S.J. at 11.

At this stage in the case, the court must examine the evidence in the light most favorable to Plaintiffs. The evidence, when taken as true, shows not only that Evans draped his arms around the girls' shoulders, but that he also asked the girls such things as "Do you like my car?" and "Do you like me?" Taken as a whole, the court cannot say, without more, that the alleged incidents are not offensive, "arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." *See Taylor, supra.*

Evans' contact with Janet and Sally obviously does not rise to the same level as that of individual wrongdoers in *Taylor*, *Rains County*, or *Gonzalez*. Plaintiffs admit that no fondling occurred, no massaging, and certainly no sexual intercourse. The court does not want to make the parties go to the expense, time, and emotion of a jury trial regarding sexual abuse, if what occurred will

not be considered abuse. Nevertheless, the court prefers to exercise an abundance of caution when it comes to gauging social norms. Therefore, a material fact question exists as to whether Evans' conduct constituted an invasion of bodily integrity, and whether violation of a liberty interest under § 1983 has been shown. If it is the court's job to decide whether Evans' conduct shocks its conscience such that a substantive due process right was violated, it will do so only after hearing all of the evidence. Therefore, summary judgment must be DENIED as to the § 1983 claims against Evans.

*B. Plaintiffs' § 1983 claims against BISD*

Plaintiff alleges that BISD deprived Janet and Sally Doe of their constitutional rights to substantive due process because it: (1) failed to adequately supervise BISD employees; (2) failed to adequately train its personnel with regard to recognizing and responding to the sexual assault of school children; (3) failed to institute a policy regarding the recognition and reporting of alleged sexual assaults; and (4) has inadequate procedures for hiring teachers.[6] Pls.' Am.Comp. at 6–7, para. IV(B). Plaintiffs allege that each of these failures shows a deliberate indifference to the constitutional rights of Janet and Sally Doe on the part of BISD.

 There is a threshold inquiry as to whether Plaintiffs have submitted sufficient evidence to overcome summary judgment for the school district, regardless of the actions of the individual persons involved. Liability may not be imposed on school districts under a theory of vicarious liability or *respondeat superior. Collins,* 112 S.Ct. at 1066. Instead, a plaintiff must show the existence of a policy or custom attributable to the school district which was the "moving force" behind the deprivation of constitutional rights. *Mo-*

*nell v. Dep't. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A plaintiff must establish that the alleged constitutional injury was caused by the execution of an official policy, toleration or approval by some person or entity that has final policy-making authority for the school district. *Gonzalez v. Ysleta I.S.D.,* 996 F.2d at 753–54 (the general rules of *Monell* apply to the liability of school districts).

 "To support a claim based upon the existence of an official custom or policy, the plaintiff must plead facts which show that: (1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation." *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 532–533 (5th Cir.1996). In a recent case involving municipal liability for an alleged § 1983 violation, the Supreme Court clarified its position on the elements and evidence necessary to hold a municipality liable under § 1983 and *Monell* for a policy, custom or tradition that violates constitutional rights. *Bd. of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).[7]

 Liability under § 1983 for a policy or custom can only attach if the plaintiff can show *deliberate* action attributable to the school district itself, and that such action is the "moving force" behind the violation of the protected rights. *Id.* 117 S.Ct. at 1386; *see also Rains County,* 66 F.3d at 1409 (reiterating the "moving force" requirement first articulated in *Monell*). The Plaintiff must demonstrate a *direct causal link* between the alleged action and the deprivation of federal rights. *Bryan County,* 117 S.Ct. at 1388.

---

**6.** There is some language in Plaintiffs' Response to BISD's Motion for Summary Judgment indicating that Plaintiffs are attempting to claim a § 1983 violation for inadequate hiring procedures, even though no such claim could be found in the Amended Complaint. Without deciding whether or not such a trial amendment would be allowed, and subject to objections of Defendants should Plaintiffs seek an amendment, the court will give Plaintiffs the benefit of the doubt and will examine this cause of action for evidence of a fact issue that may defeat summary judgment.

**7.** A "custom", for the purposes of liability, is a practice "that has not been formally approved by an appropriate decision maker" but that is "so widespread as to have the force of law." *Bryan County,* 117 S.Ct. at 1388 (citing *Monell,* 436 U.S. at 690–691, 98 S.Ct. 2018).

With these caveats in mind, the court will now examine each theory under which Plaintiffs would hold BISD liable for a policy or custom causing a § 1983 violation. As will be shown, Plaintiffs have failed in each instance to prove one or more of the elements necessary for BISD policy liability. Therefore, as to each theory against BISD, Plaintiffs' § 1983 claim fails as a matter of law.

### 1. Failure to supervise

Plaintiffs claim that BISD was deliberately indifferent through its policies of supervision. First, BISD could be held liable for its policies in supervising its teachers, if those policies were the moving force behind the alleged constitutional violations. Second, BISD could be held liable for its policies in supervising its principals, if those policies were the moving force behind the alleged constitutional violations.

■■■■ But BISD must have some affirmative policy or custom of supervision that makes it liable. That policy or custom must have been instituted by a decision-making authority within the district, and must be adduced by affirmative evidence. In this case, Plaintiffs have submitted absolutely no evidence of a BISD policy or custom of supervision over its teachers. Nor have Plaintiffs submitted evidence of a BISD policy or custom of supervision over its principals. Nor is there evidence that such policies were the "moving force" behind Plaintiffs' alleged constitutional violations. There is no evidence at all of any BISD policies of supervision.

Further, the court will assume, *arguendo*, that it is possible that BISD could be held liable for the *lack* of a policy or custom of supervision, if the lack of the policy or custom was a moving force behind a violation of Plaintiffs' constitutional rights. But liability under such a theory would only be tenable if Plaintiffs showed through affirmative evidence that BISD lacked such a policy, and that the absence of such a policy was the moving force behind the violations of Plaintiffs' constitutional rights. Plaintiffs have also failed to show the absence of a policy, and therefore cannot show the other required elements. The court will not assume based on a lack of evidence that a policy or custom does not exist—it is Plaintiffs' duty to provide evidence of an absence of such a policy, if that is what they allege.

Plaintiffs had a chance to depose Traylor, and presumably could have asked him the methods and policies of BISD regarding supervision of its teachers and principals, or the lack thereof. Due to the lack of affirmative evidence that a BISD policy, or lack thereof, was inadequate *and* was the moving force behind a violation of Plaintiffs' constitutional rights, summary judgment is GRANTED on this claim.

### 2. Failure to adequately train personnel to recognize and respond to the sexual assault of schoolchildren

■■■■ This claim fails for the same reason as the claim for "failure to supervise." There is no evidence of a BISD policy, adequate or inadequate, of training its employees to recognize and respond to sexual assault. Nor is there evidence of a lack of training, and the affirmative choice of the BISD Board of Trustees to not have that training. Plaintiffs have the duty to adduce affirmative evidence of these policies, once Defendants established that there was an absence of evidence on an essential element of their claim. BISD established that there was no evidence before the court that BISD policies, or lack thereof, were inadequate or were the moving force behind the alleged constitutional violations. Once that burden was discharged, it became Plaintiffs' burden to present sufficient evidence otherwise. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Without evidence of a policy or custom, or lack thereof, Plaintiffs' claim necessarily fails. Summary judgment is therefore GRANTED on this claim.

### 3. Failure to institute a policy regarding the recognition and reporting of alleged sexual assaults

Beginning in 1993, BISD promulgated a policy prohibiting sexual harassment of students. Policy 4040, BISD's Mot. for S.J., Ex. B. Policy 4040 lists several types of contact

or treatment that are considered harassment by BISD. These include "Repeated unwelcome flirtation, advances, propositions" and "Offensive or inappropriate touching." *Id.* The policy states that any BISD employee will be subject to disciplinary action for violating the policy, and that disciplinary action can include non-renewal or termination. *Id.*

 The evidence shows that Policy 4040 specifically threatens those who engage in sexual abuse with a range of punishments to be determined by the Board. There is no testimony from Traylor or other teachers on the merits or faults of Policy 4040, or the manner in which it is implemented. On its face, the content of Policy 4040 shows a genuine concern for the constitutional rights of the students of BISD, not deliberate indifference. With no evidence of deliberate indifference, BISD cannot be held liable for its policies regarding sexual abuse or child abuse. Moreover, there is no evidence that Policy 4040 was the "moving force" behind Plaintiffs' alleged constitutional violations.

 Plaintiffs argue in their Amended Complaint that the actions of Principal Traylor and Marlot Shook should be attributed to BISD as evidence of a district-wide policy of deliberate indifference to the recognition of and response to child abuse. Pls.' Am.Comp. at 7, para. IV(B). In other words, Plaintiffs appear to argue that Policy 4040 is fine in its content and definition, but that the policy does not dictate how to recognize or respond to sexual abuse. According to Plaintiffs, the actions of Traylor and Shook, and their inability to recognize abuse, are evidence of the BISD policy or lack thereof.

There is some evidence that prior sexual abuse accusations were leveled against Evans in August of 1993. Pls.' Exs., Ex. C, Bates Stamp # 160; *see supra* Section I(C). This evidence shows that Principal Traylor was informed of the charges, that he investigated the charges and held a conference with the child's parent and with Evans, and that he placed a written reprimand in Evans' file. This investigation and reprimand took place, even though the child's own parent stated in conference that the child's accusations of sexual abuse likely had their origins elsewhere. Therefore, regarding this earlier incident, it appears Traylor had no trouble recognizing or responding to allegations of sexual assault; if anything, he reacted conservatively by reprimanding Evans for something that the child's own parent admitted might not be true.

Second, there is some evidence that Shook was told by Janet Doe about the events giving rise to this lawsuit as early as February, 1994. There is evidence that Shook responded that she "didn't want to hear it," and that Janet was "off-task." *See supra* Section I(A). On the other hand, Janet Doe also admits that she did not tell Shook that Evans had touched her—she only told Shook that Evans made her uncomfortable and was flirting with her. Plaintiffs therefore want the court to assume the existence of an inadequate BISD policy, because of the actions of a single teacher.

 The actions of Traylor and Shook do not automatically become attributable to BISD policy; liability under *respondeat superior* is not permitted in this area of the law. *Collins v. City of Harker Heights,* 112 S.Ct. at 1066. BISD is not liable for an alleged policy or custom unless it is shown that the policy or custom was specifically adopted or approved by a policymaker within BISD. The identification of those officials whose decisions represent the official policy of the school district is a legal question to be resolved by the trial judge. *Gonzalez v. Ysleta I.S.D.,* 996 F.2d at 752 (quoting *Jett v. Dallas I.S.D.,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), and collecting authorities). Therefore, the court must decide who has final policymaking authority for BISD. *Id.* Texas law provides that the Board of Trustees is responsible for determining school policy. Tex.Educ.Code §§ 11.051, 11.151 (West 1996). Plaintiffs have provided no evidence to overcome this presumption of state law. *Gonzalez v. Ysleta I.S.D.,* 996 F.2d at 752.

 Under these facts, Traylor's and Shook's actions are not enough to show a general policy of BISD in failing to recognize and report sexual abuse. The actions of Traylor and Shook are not policy attributable to BISD. Even if it were assumed that Tray-

lor and/or Shook were policymakers, their actions do not provide enough evidence of a district-wide policy of inadequate recognition and response to sexual abuse. While it is true that under the right circumstances a single occurrence can be recognized by the courts as a policy, *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Supreme Court has warned against this practice. *Bryan County,* 117 S.Ct. at 1389. In that case, the Court noted that a single act, even if by a policymaker, would not be enough if the culpability of the municipality/school district could not be shown:

> That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably ... [A] plaintiff seeking to establish municipal liability ... must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.

*Bryan County,* 117 S.Ct. at 1389–90.

The tenuous connection between Traylor's actions and Shook's actions on two separate occasions under very different circumstances, and the presumption from these events of the existence of a district-wide policy amounting to deliberate indifference, is too large. Plaintiffs have presented, at best, a scintilla of evidence. Plaintiffs have failed in their burden to show the court evidence of a policy manifesting deliberate indifference to Plaintiff's constitutional rights, in recognizing and responding to sexual abuse. Nor is there evidence that such a policy was the "moving force" behind Plaintiffs' alleged constitutional violations. Summary judgment is therefore GRANTED as to this claim.

### 4. BISD's Hiring Policies

 Plaintiffs claim that BISD's hiring policies were inadequate to the point that the policies evidenced a deliberate indifference to the Plaintiffs' constitutional rights. Pls.' Resp. to BISD's Mot. for S.J. at 2, para. 3; *id.* at 4–5, para. 5. To prove that a hiring policy violated Plaintiffs' rights under § 1983, Plaintiffs must show that (1) the hiring procedures were inadequate; (2) the school officials were deliberately indifferent in adopting the hiring policy; and (3) the inadequate hiring policy directly caused Plaintiffs' injury. *Hillsboro,* 81 F.3d at 1403. In order to show the first element, an inadequate hiring policy, Plaintiffs must show that BISD had actual knowledge of the seriously deficient character of an applicant or a persistent, widespread pattern of hiring teachers that engage in sexual abuse. *Id.* Here, Plaintiffs have shown neither.

 According to Plaintiffs, BISD Executive Director of Personnel, Dr. H.C. Monroe, a relative of Evans', called Evans in Austin and asked him to come work at BISD. Evans moved to Beaumont from Austin, and began working for BISD in January 1992. Depo. of Shedrick Evans at 37–42, Pls.' Exs., Ex D. There is some deposition testimony of Mr. Evans which indicates that he counted among his references some political figures, and that those references were submitted to the school district to vouch for Evans' character. The court agrees that the evidence shows that BISD hired Evans even though he did not have a degree in education and was not certified by the State of Texas to teach. The evidence also shows, however, that Evans was hired on the condition that he continue to take education classes that would allow him to earn his teaching certificate. There is no evidence that there is anything improper with the manner in which Evans was offered the job, or the manner in which he was treated. When Evans moved from Austin to Beaumont to begin teaching, he knew that he would not be considered an official teacher until he had obtained his certificate. Further, once it was realized Evans was not handling his teaching duties to the level that was expected of him, he was reprimanded like any other teacher, and his supervisors advised BISD that his contract not be renewed. The evidence shows that Evans' contract was not renewed due to his performance as a teacher, prior to any of the allegations brought in this case.

Besides possibly the fact that Evans came to work for BISD without a teaching certificate, Plaintiffs have offered no evidence that

BISD had actual knowledge of any deficiency in Evans' character. Moreover, even assuming for the purposes of summary judgment that the hiring of Evans without a teaching certificate shows that BISD knew Evans had a character deficiency, there is absolutely no connection between Evans' lack of a teaching certificate and the alleged violations of Plaintiffs' constitutional rights. Plaintiffs have shown no connection between the possession of a teaching certificate and an abstention from sexual abuse, either in general or in this particular instance. Plaintiffs have not shown how Evans' lack of a teaching certificate should have tipped off BISD that Evans might sexually abuse students. Therefore, BISD could not have been deliberately indifferent to Plaintiffs' constitutional rights—there is no nexus between the deficiency and the constitutional violation.

Since Plaintiffs cannot show that BISD knew Evans' character was "seriously deficient," their only other option is to show that BISD and its agents have a custom or policy of hiring numerous persons with a history of sexual abuse. There is no evidence to support this argument. Plaintiffs have failed to show that BISD's hiring procedures were inadequate or, alternatively, that the inadequacy was related to the alleged harm. Therefore, as a matter of law, BISD could not have been deliberately indifferent to Plaintiffs' alleged constitutional injuries. Summary judgment must be GRANTED on this claim.

For the foregoing reasons, summary judgment on all of Plaintiffs' § 1983 claims against Beaumont Independent School District, under a theory of substantive due process, is hereby GRANTED.

### C. Plaintiffs' § 1983 claims against Traylor

Plaintiffs allege that the principal of Homer Elementary, Dr. Norman Traylor, is liable under § 1983 for violations of Plaintiffs' substantive due process rights because: (1) he failed to adequately supervise Evans in the performance of his job; (2) failed to remove Evans from his job after Traylor was made aware of previous alleged sexual assaults committed by Evans; and (3) failed to report the incident involving Janet and Sally pursuant to the Texas Child Abuse Reporting Act. Pls.' Resp. to BISD's Mot. for S.J. at 4–5, para. 5. Plaintiffs allege that these various acts and omissions manifested a deliberate indifference to Plaintiffs' constitutional rights. Pls.' Am.Comp. at 7, para. IV(C–D). Traylor argues, *inter alia*, that he is entitled to qualified immunity.

The first step in analyzing whether a defendant is entitled to qualified immunity is to determine whether the plaintiff has alleged a constitutional violation. *Rains County*, 66 F.3d at 1404 (citing *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994)). In a sexual abuse case under § 1983, a supervisory school official can be held personally liable for a subordinate's violation of a student's constitutional right to bodily integrity. To establish a claim for a constitutional violation against a supervisory school official, a plaintiff must show that: (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by subordinates pointing plainly toward the conclusion that the subordinates were sexually abusing the students; (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously needed to prevent or stop the abuse; and (3) such failure caused a constitutional injury to the student. *Hillsboro*, 81 F.3d at 1402; *Rains County*, 66 F.3d at 1412; *Taylor*, 15 F.3d at 454.

#### 1. Failure to supervise

It is obvious from the evidence submitted that Traylor was well aware of Evans' problems as a teacher, and that Traylor repeatedly warned Evans about the manner in which he disciplined his students. There is ample evidence that Evans was warned repeatedly about being too rough with students, that he was not necessarily following lesson plans correctly, and that Evans was not "getting with the program." Pls.' Exs. and Documents, Ex. C.

Thus, a fact issue might exist as to whether Traylor knew Evans was too harsh in his use of corporal punishment, or whether

Traylor knew Evans was not a very good teacher. But those are not the issues in this case and do not factor into the test for supervisor liability in a sexual abuse case. These memoranda do not point towards Traylor's knowledge of any *sexual abuse.* Except for a single instance discussed in the next section, there were no allegations of sexual abuse leveled against Evans, prior to the reports of Janet, Sally, and their class-mates. The evidence is not sufficient to show that Traylor had actual notice of a *plain* conclusion that Evans was committing *sexual assault* on students.

### 2. Failure to Remove Evans from his job when allegations of sexual abuse first became known

Plaintiffs allege that Traylor exhibited de-liberate indifference to the rights of Plaintiffs because he did not remove Evans from his job when a prior report of sexual abuse was made against the teacher. A memorandum dated August 30, 1993, shows that a student alleged that on August 27, Evans "looked under her dress, hugged her, and told her that she was a fine baby." Pls.' Ex. and Documents, Ex. C, Bates Stamp # 160. The memorandum shows that Traylor investigat-ed the claim by holding a conference with a parent of the child and with Evans. In that conference, Evans denied the allegations, and there is evidence that the credibility of the sexual assault allegation was diminished by the child's own parent. The parent stated that the child had been sexually abused pre-viously and that experience was probably the genesis of the sexual abuse claim.

The court is fully aware of the low threshold of evidence necessary to defeat summary judgment. But a single instance is not necessarily enough to provide actual, or even constructive, notice to the principal of an educational institution. *See, e.g., Canutil-lo I.S.D. v. Leija,* 101 F.3d 393, 402 (5th Cir.1996) (teacher's abusive conduct was not so pervasive that a reasonable juror could find constructive notice, in spite of the fact that the student and her mother had report-ed the abuse to a teacher). When examining all of the evidence in the light most favorable to Plaintiffs, the evidence shows that, as a matter of law, Traylor did not have sufficient evidence that pointed plainly toward the con-clusion that Evans was sexually abusing his students prior to the reports of Janet and Sally Doe.

### 3. Failed to report the incident involving Janet and Sally pursuant to the Texas Child Abuse Reporting Act

Plaintiffs next argue that Traylor was de-liberately indifferent to the constitutional rights of Plaintiffs since he did not immedi-ately report complaints against Evans of al-leged sexual abuse to the proper authorities, as required under the Texas Child Abuse Reporting Act. The Texas Child Abuse Re-porting Act mandates an affirmative duty on school personnel to report abuse, if they have cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by the abuse. TEX.FAM. CODE §§ 261.101 (West 1997); *see also* Pls.' Am.Comp. at 7, para. IV(D).

When a supervisor who has legal control over a teacher fails to report abuse by the teacher over whom he has control, that failure to report can be an "act under color of state law" that can support a claim for violation of a constitutional right. *Rains County,* 66 F.3d at 1417 n. 7. A breach of the Texas Child Abuse Reporting Act can inform the claim based on a theory of "duty to report," but is not dispositive of it. There is no separate cause of action under § 1983 for failure to report based solely on TEX.FAM. CODE §§ 261.101–261.106. *Doe v. Rains County I.S.D.,* 76 F.3d 666, 669 (5th Cir.1996) (*"Rains County II"*). The § 1983 cause of action does not arise strictly from the super-visory official's breach of his duty to report, "but ... is simply one manifestation of his failure to take steps to prevent or eliminate injury to a student." *Id.* (quoting *Rains County,* 66 F.3d at 1417 n. 7).

Plaintiffs maintain that the failure to re-port earlier abuse by Evans led to the viola-tions of Plaintiffs' constitutional rights al-leged in this suit. But there is no evidence that Traylor knew of any actual earlier abuse to report. As stated above, the child who reported abuse in August 1993 was not nec-essarily credible, according to her own par-

ent. Further, Traylor had already told the child's parent about the report; therefore, Traylor would have had good reason to believe that Evans was no longer a danger in terms of sexual abuse, since he had been quickly investigated and warned at even the slightest hint of an allegation. But even that speculation is unnecessary. Assuming that Traylor could be held liable for failure to report the abuse as to the earlier child, the court finds any connection between the failure to report that incident, and the occurrence of Plaintiffs' incident, to be wholly unsupported by the evidence.

▆▆▆ Plaintiffs also allege that Traylor did not report to the authorities what Janet and Sally and the other girls in their class told him on April 14, 1994. This claim is not supported by the evidence. The evidence submitted shows that worried parents met with Traylor the day after the principal found out about the allegations. By the time that Traylor met with the parents, Evans had already been suspended. There is no evidence that Traylor did not report the incident, and there is every indication that he took every action "to prevent or eliminate injury to [Plaintiffs.]" *Id.* (quoting *Rains County I,* 66 F.3d at 1417 n. 7). Preventing or eliminating the danger, not necessarily the formality of a report, was his duty.[8] *Id.* The court finds no evidence from which a reasonable jury could find that the principal's actions or inactions in this case reached a level of deliberate indifference as to his duty to protect the students from harm, whether through reporting the allegations or other actions.

### 4. Conclusion: Qualified Immunity for Traylor

▆▆▆ In this case, Principal Traylor acted as quickly as credible information allowed. His knowledge of any potential sexual abuse by Evans is far less than the knowledge attributed to other principals granted immunity in similar cases. *Doe v. Rains County,* 76 F.3d at 669 n. 2 (suggesting that the grant of immunity was proper in *Rains County I,*

especially considering the immunity granted to the principal in *Taylor*). Plaintiffs have not provided sufficient evidence to the court to create a genuine issue of material fact as to whether the actions of Traylor, under each theory, manifested a violation of Plaintiffs' constitutional rights. A grant of immunity is required. Summary judgment on all § 1983 claims as to Traylor is therefore GRANTED.

### IV. PLAINTIFFS' § 1983 CLAIMS UNDER EQUAL PROTECTION

The court was unable to find a case recognizing an equal protection claim under these facts. Moreover, none of the parties offered arguments to support or deny a cause of action under the Equal Protection clause of the Fourteenth Amendment.

▆▆▆ In *Taylor,* the Fifth Circuit ruled that the § 1983 substantive due process claim of a student under these facts superseded any possible equal protection claim, absent any arguments to the contrary. *Taylor,* 15 F.3d at 458. According to that court, assuming that the abuse actually occurred, the sexual abuse violates a student's substantive due process rights as a matter of law. *Id.* Like the plaintiff in *Taylor,* Janet and Sally "do not claim that the damages that [they] could recover . . . based on the alleged violation of their equal protection rights would be any more extensive than the damages that they could recover based on the substantive due process violation." *Id.*

Plaintiffs have failed to show how BISD, Traylor, or Evans could be liable for equal protection violations on any facts or legal grounds other than the due process violations involving the conduct already alleged. Therefore, no evidence exists to show a material question of fact on any equal protection claim, and summary judgment is GRANTED as to all defendants on that claim.

### V. PLAINTIFF'S TITLE IX CLAIMS

▆▆▆ Title IX prohibits discrimination against beneficiaries of programs and activities which receive federal funds. It allows private litigants to use Title IX to recover

---

**8.** Obviously his actions worked, as both Janet and Sally Doe admitted in deposition that they never saw Evans again after they made their reports to Traylor. Depo. of Janet Doe at 30–31; Depo. of Sally Doe at 42.

money damages when teachers sexually abuse students. *Doe v. Lago Vista I.S.D.,* 106 F.3d 1223, 1225 (5th Cir.) (citing *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)), *cert. granted,* —— U.S. ——, 118 S.Ct. 595, 139 L.Ed.2d 431 (1997). Under Title IX, Plaintiffs must prove that: (1) an educational program or activity; (2) which receives federal financial assistance; (3) subjected them to discrimination; (4) on the basis of sex. 20 U.S.C. § 1681(a).

■ Plaintiffs have alleged claims under Title IX against Defendants Traylor and Evans, in both their official and individual capacities. Pls.' Am.Comp. at 8–9, para. IV(G–J). Only an educational institution may be sued for violations of Title IX—the individuals involved cannot be sued under this cause of action. *Doe v. Hillsboro I.S.D.,* 81 F.3d 1395, 1400 n. 9 (5th Cir.1996) (stating that although the Fifth Circuit has not yet passed on it, the district courts in the Circuit have all ruled that individuals cannot be sued under Title IX). Therefore, the court finds that, as a matter of law, the Title IX claims brought against the individual defendants in this case, Traylor and Evans, cannot survive and summary judgment should be GRANTED as to Traylor and Evans on the Title IX claims.

■ BISD, as an educational institution, can be sued for Title IX violations. Recently, the Fifth Circuit has handed down several decisions which examine the liability of a school district in a Title IX case. *Lago Vista, supra; Rosa H. v. San Elizario I.S.D.,* 106 F.3d 648 (5th Cir.1997); *Canutillo I.S.D. v. Leija, supra.* These cases came to the conclusion that school districts were not liable for Title IX violations under a standard of strict liability.[9] *Lago Vista,* 106 F.3d at 1225 (to recover under Title IX, a plaintiff must be able to articulate a theory that is less expansive than strict liability); *Canutillo I.S.D.,* 101 F.3d at 400. Nor can a school district be found liable for the actions of a harasser simply under agency principles. *Lago Vista,* 106 F.3d at 1226.

■ In the Fifth Circuit, there appear to be two possible theories under which a school district may be found liable in a Title IX action: actual notice and constructive notice. Actual notice exists where "an employee who has been invested by the school board with supervisory power over the offending employee actually knew of the abuse, had the power to end the abuse, and failed to do so." *Id.* In this case, Plaintiffs argue that Dr. Traylor, as the principal in charge of the school, knew of the abuse, had the power to end the abuse, and failed to do so.

■ The evidence shows that Traylor was the supervisory employee over Evans. Therefore, according to *Lago Vista,* Traylor could be the agent through which Title IX liability could attach to BISD. However, the court has already determined that Traylor did not know of the abuse alleged in this case until April 14, 1994, and that Traylor suspended Evans as soon as the girls reported their allegations to him. As soon as Traylor knew of the abuse, he stopped the abuse. A matter of law, therefore, Plaintiffs' Title IX claims against BISD on the basis of actual notice fail.

■ Another possible theory of liability for Plaintiffs is constructive notice. "Under this theory, Title IX plaintiffs, like Title VII plaintiffs, can prevail by showing that management-level authorities should have known of the misconduct and failed to take steps to end it." *Id.* at 1225 (citing *Waltman v. Int'l. Paper Co.,* 875 F.2d 468, 478 (5th Cir.1989)). In *Lago Vista,* the plaintiff produced no evidence that any school district employee other than the harasser knew of the violative activity; therefore, constructive notice could not be shown. In *Leija,* the student and her mother reported the abusive activity to a teacher, but the court still found that the evidence presented was not enough to reach the level of constructive notice. Therefore,

---

9. The court notes that *Doe v. Lago Vista I.S.D.,* 106 F.3d 1223 (5th Cir.1997) is currently on appeal before the Supreme Court. At the present time no decision has been issued, however. Until the decision of the Fifth Circuit is reversed or modified, if at all, the decision is the controlling law.

no Title IX liability attached. *Leija*, 101 F.3d at 402.

In this case, Plaintiffs have provided no evidence that Traylor, the supervisory employee, should have known of the alleged sexual abuse. The court agrees that there is ample evidence to show that, were this a case based on physical abuse through corporal punishment, that Traylor and BISD should have known of Evans' violent proclivities in the classroom. There is no evidence, however, that lends itself to the conclusion that Traylor should have been watching out for sexual abuse. *Cf. Leija*, 101 F.3d at 402 (constructive notice not found, even though both mother and child reported the abuse). As matter of law, therefore, Plaintiffs' Title IX claims against BISD on the basis of constructive notice fail. Summary judgment on Plaintiffs' Title IX claims is GRANTED as to all Defendants.

## VI. PLAINTIFF'S STATE LAW CLAIMS

### A. Intentional Infliction of Emotional Distress

Under Texas law, the elements for a claim of intentional infliction of emotional distress ("IIED") are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993).

### 1. IIED Claim against Evans

In this case, Plaintiffs have presented sufficient evidence to create a genuine issue of material fact that the conduct in question occurred, that the conduct by Evans was deliberate, and that Janet and Sally suffered at least some emotional distress. The only element necessary for discussion at this point is whether the alleged conduct was extreme and outrageous.

Conduct is extreme and outrageous, for the purposes of an IIED claim, if it is "atrocious" or "if it surpasses all bounds of decency, such that it is utterly intolerable in a civilized community." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 195 (5th Cir.

1996) (citation omitted). Moreover, conduct that is violative of federal laws designed to protect personal dignity easily qualifies as extreme and outrageous. *Southwestern Bell Mobile Systems v. Franco*, 951 S.W.2d 218, 224–25 (Tex.App.—Corpus Christi 1997, writ requested).

As discussed in Section III(A), *supra*, a violation of one's bodily integrity under § 1983 is alleged if the conduct in question "shocks the conscience." For the purposes of summary judgment, the two standards of "shock the conscience" and "extreme and outrageous" seem to be very similar creatures: conduct qualifies under either standard if it violates traditional notions of human dignity. In either case, the test is whether the conduct towards another person is so extreme and egregious as to be beyond the bounds of decent society. Sufficient evidence exists that creates a genuine issue of material fact on this point. Thus, summary judgment must be DENIED as to Evans on this claim.

### 2. IIED Claim against Traylor

As a matter of law, however, there is absolutely no evidence that Traylor's conduct was extreme and outrageous. For reasons stated above, Traylor's supervision of Evans never reached a level of "deliberate indifference" that would state a claim under § 1983. *See supra* Section III(C). Surely, the standard of extreme and outrageous is higher than deliberate indifference. Thus, it is unsatisfied here.

Plaintiffs argue that Traylor's failure to report the alleged abuse constituted extreme and outrageous conduct. Pls.' Resp. to BISD's Mot. for S.J. at 5–6. The court disagrees. First of all, Plaintiffs have provided no evidence that Traylor did not report the alleged abuse. Second, while the Texas Child Abuse Reporting Act is no doubt intended to protect human dignity, its violation does not reach the level of being "beyond all possible bounds of decency." *See Southwestern Bell Mobile Systems, supra.* If the violation of the Act does not give rise to an independent cause of action under § 1983,

**616**

then it certainly does not qualify as extreme and outrageous under an IIED claim.

 Under Texas qualified immunity law, if a plaintiff wholly fails to state a claim for intentional infliction of emotional distress, then an official is entitled to qualified immunity. *Cantu v. Rocha,* 77 F.3d 795, 810 (5th Cir.1996). "The court need not even decide the second question under Texas official immunity law—whether he, as a government official, is 'entitled to immunity from suit arising from performance of his (1) discretionary duties in (2) good faith as long as he was (3) acting within the scope of his authority.'" *Id.* (quoting *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994)). In this case, Plaintiffs wholly failed to establish a claim for intentional infliction of emotional distress against Traylor since their claim failed on the element of "extreme and outrageous conduct." Thus, summary judgment in favor of Traylor is GRANTED on the grounds of qualified immunity.

### B. Assault and Battery, against Defendant Evans only

 Under Texas law, the elements of battery are: (1) a harmful or offensive contact; (2) with a plaintiff's person. *Price v. Short,* 931 S.W.2d 677, 687 (Tex.App.—Dallas 1996, n.w.h.) (citing *Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627 (Tex.1967)). The elements of assault are: (1) the apprehension of; (2) an immediate battery. *Id.* In this case, Plaintiffs have presented under a material question of fact as to whether the contact of Evans with Janet and Sally was harmful or offensive, and whether it was perceived as such. Therefore, summary judgment as to these claims is DENIED.

### VII. Conclusion

For the foregoing reasons, summary judgment in favor of Defendant Beaumont Independent School District is hereby GRANTED as to all claims. Further, summary judgment in favor of Dr. Norman Traylor is GRANTED as to all claims. Finally, summary judgment in favor of Mr. Shedrick Evans is GRANTED as to Plaintiffs' equal protection claim under § 1983 and for Plaintiffs' Title IX claim, but is DENIED for Plaintiffs' substantive due process claim under § 1983 and for the state law claims of intentional infliction of emotional distress, assault, and battery. It is so ORDERED.